## J. W. Mitchell, Haskell Conley and Casto Conley v. Commonwealth.

(Decided December 14, 1926.)

### Appeal from Harlan Circuit Court.

1. Homicide—In Homicide Case, Evidence Held Insufficient to go to Jury.—Evidence held insufficient to go to jury in homicide case.
2. Criminal Law—Circumstantial Evidence Alone is Insufficient to Support Conviction, if it be as Consistent with Defendant's Innocence as with His Guilt.—Rule that conviction may be had on circumstantial evidence alone is subject to qualification that, if such evidence be as consistent with defendant's innocence as with his guilt, it is insufficient to support conviction.

G. J. JARVIS for appellants.

FRANK E. DAUGHERTY, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

This is an appeal from a judgment convicting appellants of manslaughter and fixing the punishment of each at ten years' imprisonment.

The facts are these: About ten o'clock on the evening of February 20, 1925, Mose Lewis, who operated a country store at Nolansburg, Harlan county, heard a noise and a pistol shot. On going to his store he found his son, Owen Lewis, a section laborer, lying at the steps with a pistol wound in his head. About two hours later Owen Lewis died without regaining consciousness. It also developed that the store had been broken into and that some

merchandise was lying nearby. Close to the store there were found some spikes ten or twelve inches long and a long iron bolt. Some of the spikes were identified by a blacksmith as having been taken from his shop the night before. Soon after the occurrence an effort was made to track the murderers, but so many people had gathered that the results were entirely unsatisfactory. Some of the witnesses say that the footprints near the store were similar to the footprints near the blacksmith shop, but no comparisons were made. One witness, who claims to have done some tracking, testified that one of the signs turned up the hollow towards where Mitchell lived—the other one the other way, but these were tracks leading to the blacksmith shop and not from the store. Across the railroad behind a coal gon was found a rain coat. The next morning, about nine o'clock, Mitchell came to the store. On seeing the coat he claimed it as his own, saying that he left it at a house in Evarts out of which he had moved some months before, and into which a man by the name of Blevins had moved. In the coat was an iron spike. One witness testified that he saw a light in or near Mitchell's house shortly after ten o'clock. There was further evidence that Mitchell and the two Conley boys were half-brothers. The Commonwealth also proved by two witnesses that some six months prior to the homicide Mitchell and Casto Conley proposed in a conversation that the witnesses join them in the organization of a robber band that would go about the country breaking into and robbing country stores, and that when the witnesses demurred on the ground that such operations were dangerous, and inquired what they would do in the event some one caught them, Mitchell and Casto Conley replied they would blow his brains out.

There being no evidence tending even in the remotest degree to connect Haskell Conley with the perpetration of the crime, it follows that his motion for a peremptory instruction should have been sustained.

The only evidence relied on for a conviction of Casto Conley is that he was a half-brother of J. W. Mitchell, and was present and participated in the conversation when it is alleged he and Mitchell proposed that they organize a band for the purpose of robbing stores, and stating that they would kill the person who caught them in the act. Clearly, the mere proposal to organize a band for the purpose of robbery, and murder, if necessary,

not accompanied by any evidence that the band was actually organized, or by any fact or circumstance tending to connect the accused with the perpetration of the crime charged, is not sufficient to carry the case to the jury.

With respect to appellant, Mitchell, the situation is this: It was not shown that he was in possession of any of the goods taken from the store. It was not even shown that he owned a pistol that fired a ball of the same size that killed deceased. Immediately after the homicide a large crowd gathered at the store and so many tracks were made that the attempt to track the murderers was wholly futile. It is true that there was some evidence that there were tracks that came down the path that leads between the river and Mitchell's house, and that one of the signs turned up the hollow towards where he lived, and the other one the other way, but the witness stated that he could not follow the tracks any further than the main trail on account of so much stirring. Furthermore, he never compared the tracks with the shoes of any one of the defendants, nor was there any evidence tending to show when the tracks were made. It is apparent, therefore, that the Commonwealth's case rests entirely on the alleged proposal to form a robber band, and the fact that appellant, Mitchell, claimed the rain coat in which the spike was found. It must not be overlooked that his claim of ownership was voluntarily asserted, and was accompanied by the statement that he had left the coat in a house from which he had moved about a year ago. There is no evidence that in the meantime he had ever worn the coat, although he was frequently seen in rainy weather going to the mines where he was at work. There was no attempt to show by Blevins or any one else that Mitchell's statement as to leaving the coat in the house into which Blevins moved was untrue. The coat was not found right at the store but was found on a gon across the railroad tracks and several feet away. As a matter of fact, it may have been placed there by some railroad man who had no connection with the crime. However, even if we assume that the location of the coat, coupled with the fact that it contained an iron spike, was sufficient to justify the inference that the person who left it there was one of the perpetrators of the crime involved, the mere fact that Mitchell asserted ownership of the coat under a claim that he had left it in a house from which he had moved about a year before, unaccompanied by any proof that he had the

coat in his possession at or near the time the crime was committed, falls short of showing that he carried the coat with him on the night of the homicide and was one of the perpetrators of the crime. The rule that a conviction in a criminal case may be had on circumstantial evidence alone is subject to the qualification that if the evidence be as consistent with defendant's innocence as with his guilt, it is insufficient to support a conviction. Mullins v. Commonwealth, 196 Ky. 687, 245 S. W. 285; Marcum v. Commonwealth, 212 Ky. 212, 278 S. W. 611. It is clear, we think, that the case falls within the exception, and that the evidence is not sufficient to support the conviction.

Judgment reversed and cause remanded for a new trial consistent with this opinion.