## Hollowell v. Commonwealth.

(Decided February 11, 1930.)

RUMSEY BOGGESS for appellant.

J. W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, JR., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS— Affirming.

The appellant and defendant below, Freddie Hollowell, was indicted by the grand jury of Muhlenberg county charged with the offense of receiving stolen property of the value of more than $20, knowing it to have been stolen, an offense denounced by section 1199 of our present statutes. Upon his trial he was convicted and punished by confinement in the penitentiary for one year. From the order of court overruling his motion for a new trial and the judgment pronounced upon the verdict he prosecutes this appeal, urging through counsel only two grounds of sufficient materiality to merit discussion for a reversal, which are: (1) The insufficiency of the evi-

dence to sustain the conviction and defendant's motion for a peremptory instruction for acquittal should have been given, or, if not, then the verdict was flagrantly against the evidence; and (2) that the court should have given a misdemeanor instruction upon the idea that the stolen property was of less value than $20, each of which will be disposed of in the order named.

The property alleged to have been stolen was a quantity of checks, or "flickers," made of brass and issued by a mercantile company owned and operated by a coal company in Muhlenberg county, Ky., and redeemable in merchandise at their face value at the store of the company that issued them. The undisputed facts developed by the evidence were: That on the night of October 9, 1927, the store house of the Kirk Mercantile Company that issued the flickers and which bore its name was broken into with burglarious intent, and its safe was blown open with some kind of explosive and $435 worth of flickers taken therefrom. Other property was also taken from the safe, but it is not involved in this prosecution. The fact of the burglarizing of the store was published in all of the county papers in a large vicinity surrounding Muhlenberg county, and the burglary was much discussed and given wide circulation. Defendant lived in a mining settlement in an adjoining county distanced about 20 miles from Greenville, the county seat of Muhlenberg county. He stated in his evidence that he sometimes dealt in such commodities, i. e., that he purchased flickers from those to whom they had been paid at a discount and for a profit.

The policemen in surrounding towns and other officers in the same territory were on the alert to discover the perpetrators of the crime; but no clue was discovered. In June, 1928, defendant appeared in Greenville, Ky., with a quantity of the flickers issued by the Kirk Mercantile Company and some issued by the Beech Creek Coal Company, also connected with the Kirk Mercantile Company, and he sold $16 worth of them to a Mr. Arbuckle, who operates a restaurant in Greenville, at a discount of 40 per cent. of their face value. Directly after making that sale he made the acquaintance of a colored man in Greenville by the name of Elliott, and procured him to effect a sale of more flickers to Arbuckle, which was done, and the reason given by defendant for procuring the services of Elliott was that he, being a stranger to Arbuckle, could not procure more than 60

cents on the dollar for the flickers, while an acquaintance of his could procure 75 cents on the dollar, which latter amount Elliott received.

Some few days thereafter defendant again appeared in Greenville and had on his person more than $100 worth of the same stolen flickers. He negotiated a sale of $55 worth to Arbuckle and had them counted out and on the counter ready to receive payment therefor when he was arrested. He stated to the arresting officer at that time that he procured the flickers from his son; but before reaching the courthouse he modified that statement by saying that he had won them, or a large portion thereof, at games played with unknown parties in Central City. On the witness stand he testified to having purchased a large portion of them from an unknown white man in the mining village where he lived. It will thus be seen that he, within a comparatively short time, told three distinct stories as to the source, mode, and manner through and by which he came into possession of the flickers. He also stated that the first visit he made to Greenville was for the purpose of conversing with Mr. Kirkpatrick, an officer of the burglarized company, concerning the flickers, but just what was intended to be accomplished thereby was not made clear. He stated that he went to the home of Mr. Kirkpatrick and the latter's daughter informed him that her father was out of the city; but it was overwhelmingly proven that Mr. Kirkpatrick was in Greenville all that day, or the greater portion of it.

Shortly after defendant's arrest, and in an effort to verify his story that he had won the flickers in a game with unknown parties in Central City, the sheriff went with him to that place and permitted him to search at large for something like four hours, and he was unable to find any one with whom he had gambled in any kind of game and from whom he won any character of property whatever. Of course, defendant denied any knowledge of the burglary, or that the flickers had been stolen by any one, and with the evidence in such condition it is seriously argued that it was insufficient to submit the case to the jury, and likewise insufficient to sustain the conviction; but we cannot agree with that argument.

It is true that we frequently reverse cases for insufficiency of evidence to sustain the conviction, and in the opinions so written it is in substance stated that a conviction cannot be sustained on mere suspicion or sur-

mise, and it is the cases of that kind that counsel for defendant cites and relies on, one of the latest of which is Pardue v. Commonwealth, 227 Ky. 205, 12 S. W. (2d) 288. But an examination of that and other similar cases will clearly demonstrate that the facts in them were far different from those appearing in this case. In the first place the statute itself makes the possession of stolen property prima facie evidence against the possessor. It is not necessary in this case to determine whether that fact alone would be sufficient to sustain a conviction (see Mansbach v. Commonwealth, 230 Ky. 604, 20 S. W. (2d) 468, and Shaw v. Commonwealth, 229 Ky. 412, 17 S. W. (2d) 26, and we, therefore, decline to determine that question. But the cited cases hold that the statute creating the presumption of guilt does, at least, have the effect of casting the burden on the possessor to explain his possession consistent with his innocence. The explanation attempted by defendant in this case, as hereinbefore pointed out, was extremely contradictory, and it was not only thereby rendered inconsistent with his innocence, but such inconsistency developed falsehood in defendant's testimony which itself is a strong circumstance of guilt.

Moreover, the defendant's pretended want of knowledge of the prior commission of the burglary is itself somewhat incredible, and especially so when it is considered that all the while he resided within between 20 and 30 miles of the place where that crime was committed, and between then and the time of his arrest the fact was the subject of universal public discussion in that vicinity. Another suspicious fact is the procuring of Elliott to dispose of an additional quantity of the flickers. If defendant had acquired them bona fide and honestly the natural course to pursue would have been for himself to negotiate any transaction looking to their sale, and the excuse he gave therefor is largely destroyed when it is remembered that but a few days thereafter he, in person, attempted to dispose of a considerably larger amount to the same individual. Upon the whole we conclude that the facts of this case possess much stronger elements of guilt than those in any of the cases relied on by counsel, one of which, as we have seen, is Pardue v. Commonwealth, supra.

■ In support of ground (2) it is argued that the aggregate amount of all the flickers exhibited to the jury at the trial did not reach $20 so as to subject defendant

to a felony punishment, and, therefore, he should have had an instruction on the misdemeanor feature of the statute when the value of the involved property was less than $20. In other words, it is the contention of counsêl that the commonwealth was bound by the proven value of the flickers that were actually exhibited to the jury, notwithstanding the proof showed that defendant was in possession of a much larger amount which were not exhibited to the jury. A mere statement of the proposition is sufficient to refute its soundness. The commonwealth could have sustained a conviction without introducing any of the flickers by proving the possession of them by defendant and their value together with óther elements necessary to a conviction. The introduction of a sample of those that were stolen, of every denomination, was for the purpose of identification, and not for the purpose of confining the value of all of those of like denominations that were actually stolen on the night of the commission of the burglary. Since, therefore, defendant was proven to have possessed other flickers of like denominations, of the combined value of more than $100 and which he himself admitted there was no occasion for the misdemeanor instruction contended for, and the court did not err in failing to give it.

Perceiving no error prejudicial to the substantial rights of the defendant, the judgment is affirmed.