### Mattingly v. Commonwealth.

(Decided October 6, 1922.)

### Appeal from Hopkins Circuit Court.

1. Intoxicating Liquors—Possession by Agent.—If one acting as the agent of another has whiskey in his possession for the purpose of sale, the whiskey at the time being the property of such other and in the agent's possession by and with the consent of the principal, the possession of the agent is the possession of the principal.

2. Criminal Law—Accomplices—Circumstantial Evidence—Corroboration.—A conviction of a defendant may be had upon circumstantial evidence alone when that evidence is strong enough to exclude every hypothesis of the defendant's innocence; and like-

wise circumstantial evidence may furnish the corroboration of an accomplice contemplated by section 241 of the Criminal Code.

3. Criminal Law—Accomplices—Corroboration.—The evidence of witnesses other than the accomplice, and facts and circumstances therein stated, are analyzed and held to furnish sufficient corroboration of the accomplice's evidence to connect defendant with the commission of the offense charged.

4. Criminal Law—Accomplices—Corroboration.—It is not necessary that the corroborating evidence should be such that it, in and of itself, would authorize a conviction; nor is it necessary that it should be equivalent to the testimony of an additional witness.

5. Criminal Law—Accomplices—Corroboration.—It is unnecessary to pass upon the question whether or not another witness for the Commonwealth was also an accomplice, inasmuch as the evidence outside of the statements of such other witness furnish sufficient corroboration.

COX & GRAYOT for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming.

On the 8th of April, 1922, a warrant was issued from the police court of Madisonville against appellant, charging him with having in his possession for the purpose of sale spirituous, vinous, malt and intoxicating liquors, and on his trial in that court was found guilty.

He executed bond and appealed from the judgment in that court to the circuit court of Hopkins county and was thereafter tried in the latter court and found guilty, and his motion and grounds for a new trial having been overruled, he has appealed.

While there were many grounds stated in the motion only two are relied upon for reversal: First, that the court erred to his prejudice in not sustaining his motion for a directed verdict of not guilty; second, that instruction three given by the court on the question of corroboration of an accomplice was fatally defective.

The evidence fails to show that appellant was ever actually in possession of the whiskey in question in Madisonville or elsewhere, but his guilt or innocence depends upon whether or not the witness Dyer had such possession for such purpose in Madisonville as the agent and representative of appellant, for, as pointed out in the instructions of the court, if Dyer acting as agent of Mattingly had whiskey in possession in Madisonville for the

purpose of sale and the whiskey was at the time the property of appellant and was in Dyer's possession by and with his consent, the possession of Dyer was the possession of appellant. Knight v. Commonwealth, 194 Ky. 563. The witness Dyer testified in substance that he lived at Waverly in Union county, and that appellant lived at Henderson, Kentucky; that on the 6th or 7th of April appellant came to him in Union county and employed him to bring fifteen gallons of liquor to Madisonville; that he and Mattingly were second cousins and he had known him practically all of his life; that he saw Mattingly at Waverly in the afternoon about four o'clock and that he went thereafter to the farm of Mattingly's father in Union county, Mattingly not being present, and loaded the whiskey into a vehicle owned by Mattingly's father, to which horses were hitched belonging to Mattingly's father, and drove that night to Madisonville, arriving there at about half-past one or two o'clock the following morning and delivered the fifteen gallons of whiskey to one Blackwell in Madisonville; that he thereafter drove his horses to a livery stable and put them up, and met the four-thirty-four train from Henderson and upon which train he knew Mattingly would be a passenger, as he had been informed by Mattingly; that Mattingly did get off that train and he met him and they left the depot together and went to the hotel together and roomed together at the hotel where they were arrested about eight o'clock the next morning.

While Dyer in his evidence states that he delivered the liquor at the home of Blackwell in Madisonville, he does not state that Mattingly directed him to deliver it there. And Blackwell in his testimony states that a young man that he did not then know, and who he afterwards learned was Dyer, delivered the liquor to him, but states that he did not know appellant, and there was no previous arrangement between appellant and him by which the liquor was to be delivered at his house.

There is no direct evidence in the record showing that Dyer was employed by and acting as the agent of appellant except the evidence of Dyer himself, and it is urgently insisted by counsel for appellant that as Dyer's evidence shows him to be an accomplice, there is no such corroborative evidence of this essential fact as is required by section 241 of the Criminal Code, and therefore under the provisions of section 242 his motion for a directed verdict should have been sustained.

It is conceded that Dyer was an accomplice of appellant, and it is clear his statement that he had possession of the liquor in Madisonville as the agent of appellant must be corroborated in the manner prescribed by section 241, or it was the duty of the court to sustain the motion for a directed verdict of not guilty as required by section 242.

Outside of the evidence of Dyer, there was evidence of other witnesses that Dyer met Mattingly at the four-thirty-four train in the morning; that Dyer called Mattingly as soon as he got off the train, and they went to the hotel together and registered there; that they both lodged in the same room at the hotel and that appellant paid the hotel bill. It was likewise testified by the county attorney that appellant came to him and stated the team that was being held belonged to his father, and that his father had gone into bankruptcy and the team was in the hands of the trustee, and he informed appellant that if it was in the hands of the trustee in bankruptcy he would not take steps to have it sold under the prohibition act. It was shown by another witness that the team was released and that appellant paid the charges on the team, at the livery stable.

The question then is, do these facts testified to by witnesses other than Dyer furnish such corroborative evidence of the fact that Dyer was acting as the agent of appellant as is contemplated by section 241 of the Criminal Code.

It has been held it is not necessary that the corroborating evidence should be such that in and of itself it would authorize a conviction, and likewise it has been held that it is unnecessary that it should be equivalent to the testimony of an additional witness. It is a rule of evidence in this state that a conviction of a defendant may be had upon circumstantial evidence alone where that circumstantial evidence is strong enough to exclude every hypothesis of the defendant's innocence; Bowling v. Commonwealth, 193 Ky. 647; and that being true, circumstantial evidence may furnish the corroboration of an accomplice contemplated by section 241.

On the question of whether Dyer was acting as appellant's agent, the other evidence that Dyer at the unusual hour of four-thirty-four in the morning went to the depot to meet a train, and there met Mattingly, who got off of that train, and called to Mattingly and they then went to the hotel and registered, and stayed with him in

the same room, is most significant in determining whether there is additional evidence of such agency. It unmistakably would appear in an instant to the mind of a reasonable man that they, under those circumstances, were acting in concert about something, or had some very important business together that necessitated the one going at that hour of the morning to the train to meet the other, and then their remaining together for the balance of the night. Then the force of all this is strengthened by the additional fact that appellant the next morning paid the hotel bill for them both.

Not only so, appellant tells the county attorney that the team shown to have been driven into the livery stable by Dyer was his own father's team, as Dyer testifies it was, and tells the county attorney such facts as induce the later not to take steps to have the team sold under the provisions of the prohibition act. The fact that the team belonged to his father, as shown by his statement to the county attorney, is strongly and distinctly corroborative of Dyer's statement that it belonged to his father, and that the team and the whiskey came from his father's farm.

In addition to all this, it is shown that when the team was released by the county attorney and he agreed not to have it sold under the terms of the prohibition act, appellant paid the charges on the team which were due at the livery stable where Dyer had taken it.

Of what interest could it have been to appellant to pay to prevent the sale of that team, or pay the livery charges thereon, if the team had not belonged to his father and he had not been acting in concert with Dyer as testified to by the latter?

Do not these facts and circumstances, independent of any statement of Dyer, tend to connect appellant with the having in possession of this whiskey through his agent Dyer in Madisonville? Dyer reaches there at one-thirty or two o'clock in the morning, appellant reaches there at four-thirty-four on an early morning train, Dyer remains up until that time and meets him at the train, Dyer calls to him as soon as he alights therefrom, they proceed together to a hotel and they go to bed in the same room and are found there the next morning. Unmistakably these circumstances tend to connect appellant with the possession which Dyer admits he had of that liquor in Madisonville, and we hold that these circumstances, when all taken together, while they might not in them-

selves authorize a conviction of appellant, do furnish sufficient corroboration of Dyer's statement to authorize a submission of the case to a jury.

It is further contended the court erred in instruction number three by not using the word "accomplices" instead of the word "accomplice," it being contended that Blackwell was also an accomplice of appellant and that the evidence of one accomplice cannot, under the. terms of section 241, be corroborative of that of another accomplice.

But for the purposes of this case it is unnecessary to determine whether Blackwell was or not an accomplice of appellant when he received the liquor from Dyer, in the absence of a showing that there was a previous arrangement between him and appellant that he should receive the liquor, or of knowledge on his part when he received it from Dyer that the latter was the agent or emissary of appellant.

In reciting the evidence above, which we deem corroborative of Dyer's testimony that he was acting as the agent of appellant, we have not, in any particular, used any testimony of Blackwell nor referred to any fact or circumstance which his evidence disclosed as being corroborative of that of Dyer; and it is therefore apparent that even if Blackwell should be deemed an accomplice of appellant the evidence outside of his furnishes sufficient corroboration of the fact that Dyer's possession of the liquor as the agent of appellant was the possession of appellant himself.

Seeing no error prejudicial to appellant's rights, the judgment is affirmed.