## Rose v. Commonwealth (two cases).

(Decided May 9, 1933.)

J. J. DAVIS and D. H. BAKER for appellants.

BAILEY P. WOOTTON, Attorney General, and WILLIAM R. ATTKISSON, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

At the August term, 1931, of the Jackson circuit. court, Dan Rose, Lloyd Rose, Leonard Rose, and Myrtle Rose were jointly indicted for the crime of arson. They were charged with burning the storehouse of O. D. Murphy and Charlie Murphy. Dan Rose, Lloyd Rose, and Leonard Rose were convicted and sentenced to serve.

two years in the State Penitentiary. Dan Rose pleaded guilty and implicated the others, his codefendants. A motion and grounds for a new trial were overruled, and Leonard and Lloyd Rose have prosecuted this appeal. The two appeals are consolidated and will be decided in one opinion.

The only question raised by the brief of appellants is that the trial court erred in not giving a directed verdict to find the defendants not guilty. This contention is based on the ground that the testimony of Dan Rose, an accomplice, was not sufficiently corroborated as required by sections 241 and 242 of the Criminal Code of Practice.

The testimony of Dan Rose, the accomplice, was the chief evidence for the commonwealth. The question to be determined is whether or not the testimony of the accomplice was sufficiently corroborated by other evidence to warrant a conviction.

Dan Rose, the accomplice witness, stated that he and the other defendants got together at O. D. Murphy's tobacco barn at about 12 o'clock on the night the store was burned and agreed to rob the store; that they had first talked about it on the evening before and made it up to meet at the barn on that night; that he (Dan), Lloyd, and Leonard Rose made the plans and that he and the other defendants proceeded to go to the store and procured an ax from a blacksmith shop with which to break the window; that they decided to burn the store to hide suspicion; that they got some money from the store and perhaps some slippers and shotgun shells; that while he and Leonard robbed and burned the store, the other defendants stood a distance away as guards; that after they robbed the store they set fire to it; that after they left the store they went through the woods part of the way and separated about 500 yards from Nat Rose's, the father of Leonard and Lloyd Rose; that he did not go in any house that night. It is in evidence that Dan Rose had theretofore served two terms in the penitentiary, one of which offenses was for breaking into the store of this same O. D. Murphy, also the post office which was kept in the store. He admitted on cross-examination that he was told by his lawyer that if he would tell who else was connected with this offense that he would get his sentence reduced, which would be from 2 to 10 years; otherwise he might go to the peni-

tentiary for life under the Habitual Criminal Act (Ky. Stats., sec. 1130).

Troy Isaacs, witness for the commonwealth, stated that on the next morning after the store was burned he started to Murphy's to work, and just below John Rader's, near the place that Dan Rose stated he and the other defendants separated, he saw some tracks which looked like two women had walked side by side down the road. He said the tracks looked fresh, but he could not say just when they were made; that he did not pay any attention to the size of the tracks, but merely noticed that they looked like tracks of two women. John Rogers stated that on the next morning after the store was burned that he saw tracks along the road; that two signs were tolerably large and two others of a smaller size, and that he thought two of them were men tracks and the other two were women tracks, and that the people who made them were traveling from the store, which had been burned, and in the direction of the home of Nat Rose, but he said he did not know who made these tracks and that he saw nor heard nobody; that there was a store and post office beyond the point where he saw the tracks, and that people traveled that path going to the store and post office.

Some cartridges were found in the possessions of Leonard and Lloyd Rose, which were similar to the cartridges which had been taken from the store. But there was no evidence tending to identify them in any particular as being the cartridges taken from the store. The testimony only shows that they were the same caliber and make.

All the defendants (except Dan Rose, the accomplice) denied any knowledge of or any connection with the robbing and burning of the store or that they had in their possessions any of the money or other goods taken therefrom.

Eliminating the testimony of Dan Rose, the accomplice, the only other evidence was that Dan Rose had been visiting at the home of the other defendants, and the tracks, as above stated, were seen in the road, which indicated that men and women had been thereabouts at or approximately the time of the offense. But the mere incident of the tracks being there, without any further evidence that they were the tracks of the defendants, does not constitute evidence of a probative

and substantial nature as required to constitute sufficient corroboration to warrant a conviction. Shields v. Commonwealth, 203 Ky. 118, 261 S. W. 865, 868; Goodin v. Commonwealth, 212 Ky. 561, 279 S. W. 984; Harvey v. Commonwealth, 205 Ky. 356, 265 S. W. 833.

In the Shields Case, supra, the court said:

"It has been said that the proper test in determining whether there has been sufficient corroboration of the testimony of an accomplice under the provisions of our Code is to first eliminate the evidence of the accomplice, and then, if upon examination of all the other evidence there is sufficient inculpatory evidence tending to connect the defendant with the commission of the offense, there is sufficient corroboration."

And citing Commonwealth v. McGarvey, 158 Ky. 570, 165 S. W. 973.

Then applying the above rule to the instant case, after eliminating the evidence of the accomplice, we would only have this state of facts: The store was burned; tracks of men and women were seen on a publicly traveled pathway or road within the neighborhood of the location of the store, and cartridges were found in the possessions of some of the defendants, of the same caliber and general nature of cartridges which were in the store. But neither the tracks nor the cartridges were identified or otherwise connected with the defendants. We think such evidence is too trivial and disconnected with the defendants to be treated as sufficiently corroborating the testimony of the accomplice to warrant a conviction.

Upon another trial of the case, if the testimony is substantially the same, the court will instruct the jury to find a verdict of acquittal.

Reversed and remanded for proceedings consistent herewith.